CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
4/15/2025
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| MARGARET M. O'REILLY,  ) | |
| ) | |
| Plaintiff,  ) | Civil Action No. 4:24-cv-00037 |
| ) | |
| v.  ) | **MEMORANDUM OPINION** |
| ) | |
| MEDICAL FACILITIES OF AMERICA,  ) | By:   Hon. Thomas T. Cullen |
| INC., and RIVERSIDE HEALTH AND  ) | United States District Judge |
| REHABILITATION CENTER,  ) | |
| ) | |
| Defendants.  ) | |

Plaintiff Margaret M. O'Reilly ("O'Reilly") brought this action against Medical Facilities of America, Inc. ("MFA") and Riverside Health and Rehabilitation Center ("Riverside") (collectively "Defendants") alleging wrongful termination, discrimination, retaliation, and failure to accommodate, in violation of the Americans with Disabilities Act ("ADA"), *see* 42 U.S.C. § 12112, and applicable state law. (Am. Compl. at 1, 3 [ECF No. 39].) The court dismissed O'Reilly's original Complaint under Federal Rule 12(b)(6) and granted O'Reilly leave to file an amended complaint. (*See* ECF No. 38.) This case is now before the court on Defendants' motions to dismiss the Amended Complaint under either Federal Rule of Civil Procedure 41(b)—because the Amended Complaint was untimely filed—or Rule 12(b)(6)—for failure to state a claim. (ECF Nos. 40, 41.) For the reasons discussed below, the court will deny Defendants' motions to dismiss.

### I.   STATEMENT OF FACTS

The following facts are taken from O'Reilly's Amended Complaint and, at this stage, are presumed to be true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences

are drawn in the plaintiff's favor, *see Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009), and because O'Reilly filed the Amended Complaint *pro se*, the allegations are construed "liberally," *Shaw v. Foreman*, 59 F.4th 121, 127 (4th Cir. 2023).

O'Reilly has suffered from severe asthma and allergies since childhood. (Am. Compl. at 1.) During acute allergy attacks, these conditions impair her ability to breathe. (*Id.*) Her asthma also causes "frequent shortness of breath, wheezing, and coughing," as well as "fatigue[,] especially during allergy flare-ups." (*Id.*) She takes medication to manage her symptoms, but when she has acute allergy attacks, her difficulty breathing impairs her ability to perform daily tasks. (*Id.*) To prevent such attacks (to the degree she is able), O'Reilly must avoid certain triggers. (*Id.*) But she experienced a few allergy attacks in the workplace—during which she struggled to breathe, had to use her inhaler, and had to take a break to get fresh air outside. (*Id.*) Despite these measures, on at least one occasion, she experienced "continual wheezing and shortness of breath . . . for 3 additional days" after an attack. (*Id.*)

O'Reilly worked for Defendants for 14 years, and in June 2020, she was promoted to Medical Records Coordinator/Director. (*Id.* at 2.) At the onset of the COVID-19 pandemic in March 2020, she began following Defendants' new protocols to minimize in-person interactions. (*Id.*) From March to December 2020, she used electronic records and communicated through phone, fax, and email, which allowed her to continue performing her job effectively despite the pandemic. (*Id.*)

In December 2020, Defendants imposed a COVID-19 vaccination requirement for their employees, with limited exemptions. (*Id.*) After consulting with her healthcare provider, O'Reilly submitted a medical exemption request on January 6, 2021, and included a note from

her healthcare provider with her request. (*Id.*) The note explained that, due to O'Reilly's asthma and allergies, the vaccine posed a health risk to her and advised that she had been recommended not to receive the vaccine. (*Id.*) At the time, the vaccine was not recommended for individuals with O'Reilly's respiratory issues. (*Id.* at 3.) On January 22, 2021, Defendants denied O'Reilly's medical exemption request, asserting that she would be a "direct threat" to others if she remained unvaccinated. (*Id.* at 2.)

On January 27, 2021, Defendants placed O'Reilly on 45-day unpaid leave. (*Id.*) Four business days later, they posted an opening for her position on an online job-search engine. (*Id.*) On March 12, 2021, at the conclusion of the 45-day leave period, O'Reilly received a letter from Defendants stating that her employment was terminated effective March 10, 2021. (*Id.*) O'Reilly asserts that Defendants terminated her because she refused to comply with the COVID-19 vaccination requirement. (*Id.* at 3.) She also alleges that Defendants were aware that her refusal was based on her disability, and her healthcare provider's advice that she not receive the vaccine at that time. (*Id.* at 2.) Despite this, Defendants refused to exempt O'Reilly from the vaccination requirement and refused to permit her to continue using the distancing measures through which she had been successfully performing her job functions without in-person interactions for the past 10 months. (*Id.*) O'Reilly contends that Defendants thereby failed to accommodate her disability. (*Id.*)

When Defendants submitted paperwork to the Virginia Unemployment Commission following O'Reilly's termination, they asserted that the reason for her separation was a lack of work, abandonment of her duties, and voluntary separation. (*Id.*) Notably, Defendants omitted that O'Reilly was placed on forced unpaid leave and terminated. (*Id.*) Based on these allegedly

false justifications, O'Reilly was denied unemployment benefits. (*Id.*) Defendants also did not pay out her accrued hours of paid time off. (*Id.*) O'Reilly asserts that these actions were taken in retaliation for her request to obtain a medical exemption from the vaccine requirement. (*Id.*)

On February 16, 2021, O'Reilly filed a charge of discrimination with the Virginia Office of Civil Rights and the Equal Employment Opportunity Commission ("EEOC"). (*See* Compl., Ex. 3 [ECF No. 1-3].)[1] The EEOC issued a right to sue letter on January 10, 2024. (*See* Compl., Ex. 2 at 1 [ECF No. 1-2].) O'Reilly filed suit in the Middle District of Florida on April 2, 2024, bringing claims for wrongful termination and failure to accommodate under the ADA. (*See* Compl. at 1, 3–4.) The case was transferred to this court, and on December 6, 2025, it dismissed O'Reilly's Complaint under Rule 12(b)(6), concluding that O'Reilly's allegations failed to state a claim, and granted O'Reilly leave to file an amended complaint within 30 days.

The court received O'Reilly's Amended Complaint on January 15, a few days after the 30-day deadline. (*See* Am. Compl.) Defendants filed motions to dismiss on January 29, arguing that the court should dismiss the Amended Complaint under Rule 41(b) because it was untimely or, in the alternative, under Rule 12(b)(6) because it suffered from the same

---

[1] In her Amended Complaint, O'Reilly failed to reallege the facts underlying her exhaustion of administrative remedies. Generally, "a properly filed amended complaint supersedes the original one and becomes the operative complaint in the case" thereby rendering "the original complaint of no effect." *Fawzy v. Wauquiez Boats SNC*, 873 F.3d 451, 455 (4th Cir. 2017) (internal quotation omitted). As a technical matter, absent allegations in the Amended Complaint that O'Reilly properly exhausted, O'Reilly's Amended Complaint cannot state a claim. But Defendants, in their motion to dismiss the Amended Complaint, cite to the exhibits attached to the original Complaint in discussing O'Reilly's exhaustion of administrative remedies. Like Defendants, the court will therefore take notice of the allegations of exhaustion in O'Reilly's original complaint and will not require her to file a second amended complaint combining the facts underlying her exhaustion and those underlying her claims in the same document. The exhibits of the original Complaint plainly show the facts relevant to O'Reilly's exhaustion of remedies. (*See* Compl., Ex. 3.) Particularly taking account of O'Reilly's *pro se* status, requiring the filing of a second amended complaint will not serve judicial efficiency.

deficiencies as the original Complaint and still failed to state a claim. (*See* ECF Nos. 40–43.)[2] The court issued a *Roseboro* Notice[3] to O'Reilly on January 31, informing her that she had 21 days to submit a response. (*See* ECF No. 44.) O'Reilly filed a response (ECF No. 45), and Defendants filed a joint reply (ECF No. 46). The matter is now ripe for decision.

## II.    STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557). Though a *pro se* complaint must be construed liberally, the "requirement of liberal construction does not mean . . . that the court should ignore a clear failure to plead facts that

---

[2] Because Defendants' motions and memoranda in support of their motions are identical, the court will treat them as one and only cite to one of the two memoranda in support—that of MFA, which was filed first—in this opinion. The court does so for clarity and simplicity only; the discussion of one motion and memorandum in support applies equally to the other.

[3] In *Roseboro v. Garrison*, the Fourth Circuit held that *pro se* parties should be advised of their "right to file counter-affidavits or other responsive material . . . when confronted with the possibility of summary disposition of his case." 528 F.2d 309, 310 (4th Cir. 1975) (per curiam).

set forth a cognizable claim." *Walton v. WVRJ Managerial Admin. Staff*, No. 7:23-cv-00436, 2024 WL 3988927, at *3 (W.D. Va. Aug. 29, 2024) (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990)).

### III.   ANALYSIS

**A. Rule 41(b) Dismissal**

Defendants first argue that the court should dismiss the Amended Complaint in its entirety because O'Reilly did not comply with the court's December 6 Order directing her to file an amended complaint within 30 days of the date of the Order. (*See* Mem. Supp. Mot. Dismiss at 5 [ECF No. 42].) O'Reilly's deadline to file an amended complaint was January 6, but she did not mail the Amended Complaint until that day, so it was not received by the court until January 15. (*See* Am. Compl.)

Defendants are correct that O'Reilly's Amended Complaint was not timely. "Where a filing deadline is specified by the court, papers to be filed must reach the clerk's office by the deadline date. When a party mails papers to the clerk's office, filing is complete when the papers are received by the clerk or placed in the clerk's post office box. Papers arriving after a deadline are untimely even if mailed before the deadline." *Clark v. Milam*, 152 F.R.D. 66, 70 (S.D.W.V. 1993) (internal citations omitted). Because the Amended Complaint was not received by the court until January 15, O'Reilly did not comply with the court's directive to file an amended complaint within 30 days. But it does not follow that the court must dismiss the entire Amended Complaint as a result.

"The Federal Rules of Civil Procedure recognize that courts must have the authority to control litigation before them, and this authority includes the power to order dismissal of

an action for failure to comply with court orders." *Ballard v. Carlson*, 882 F.2d 93, 95 (4th Cir. 1989). A district court has significant discretion to control its docket, *see Cadet Constr. Co. v. Archer W. Constr., LLC*, No. 22-1576, 2023 WL 5317960, at *6 (4th Cir. Aug. 18, 2023) (per curiam), and "dismissal is not a sanction to be invoked lightly," *Ballard*, 882 F.2d at 95. A district court "must be careful in exercising its judicial discretion before dismissing" a case, and dismissal "should be resorted to only in extreme cases." *Cadet Constr. Co.*, 2023 WL 5317960, at *4 (internal quotations omitted). "Because the exercise of an inherent power in the interest of promoting efficiency may risk undermining other vital interests related to the fair administration of justice, a district court's inherent powers must be exercised with restraint." *Dietz v. Bouldin*, 579 U.S. 40, 48 (2016).

To determine whether dismissal is an appropriate sanction, courts must consider four factors: "(i) the degree of personal responsibility of the plaintiff, (ii) the amount of prejudice caused the defendant, (iii) the existence of a history of deliberately proceeding in a dilatory fashion, and (iv) the existence of a sanction less drastic than dismissal." *Ballard*, 882 F.2d at 95. These factors "are not a rigid four-prong test. Rather, the propriety of a dismissal . . . depends on the particular circumstances of the case." *Id.*

In her response, O'Reilly acknowledges that the Amended Complaint was untimely. She points out that her time to draft filings "is curtailed in both receiving and sending due to the mailing process" because she is proceeding *pro se* and does not have e-filing access. (Resp. Mot. Dismiss at 1 [ECF No. 45].) She further asserts that she uses "all the time allotted to [her] to attempt to follow the rules and regulations of the court, navigate the judicial system, and apply it to [her] paperwork with pedestrian knowledge of the court system." (*Id.*) She also

promises to ensure that future filings are received in a timely fashion and states that she "meant no malice" to the court or Defendants. (*Id.* at 2.)

Based on O'Reilly's representations in her response, the court concludes that dismissal is not an appropriate sanction. Though she is solely responsible for the untimeliness of the Amended Complaint, it appears to the court that she had good intentions in attempting to comply with the court's directives. This is also not a case in which litigation has been delayed for weeks or months on account of a party's repeated delay or dilatoriness. Here, the delay was only a few days, and Defendants have not presented any evidence of prejudice from it. To the contrary, their motion makes clear that they advocate for dismissal solely to punish O'Reilly. (*See* Mem. Supp. Mot. Dismiss at 5.) But such an extreme sanction is not warranted under these circumstances. The court concludes from O'Reilly's response that her delay was not a result of bad faith action or dilatoriness, and it will not undermine "the sound public policy of deciding cases on their merits," *Herbert v. Saffell*, 877 F.2d 267, 269 (4th Cir. 1989) (cleaned up), absent any showing of prejudice. Therefore, the court will not dismiss the Amended Complaint under Rule 41(b).

### B. Rule 12(b)(6) Dismissal

Defendants next argue that O'Reilly's Amended Complaint must be dismissed under Rule 12(b)(6) because it suffers from the same deficiencies as O'Reilly's first Complaint.[4] (*See*

---

[4] In their memorandum in support of their motion to dismiss, Defendants also argued that O'Reilly failed to exhaust her administrative remedies with respect to her allegations about "the denial of unemployment benefits or the unpaid PTO as potential violations of the ADA." (Mem. Supp. Mot. Dismiss at 9.) After O'Reilly attached to her response a letter that she had previously sent to the EEOC informing the EEOC of these facts (*see* Resp. Mot. Dismiss at 25–47), Defendants abandoned their failure-to-exhaust argument in their Reply and now rely solely on the fact that O'Reilly has not alleged that she is disabled within the meaning of the ADA. (*See* Reply at 4 n.1 [ECF No. 46].)

Mem. Supp. Mot. Dismiss at 6–8.) Specifically, Defendants argue that the Amended Complaint does not adequately allege that O'Reilly was disabled under the ADA because O'Reilly does not allege "how taking the COVID-19 vaccine would substantially limit any major life activity in relation to her allergies, asthma[,] or any other medical condition." (*Id.* at 6.)

All of O'Reilly's claims require her to show that she was disabled within the meaning of the ADA. *See A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 365 (4th Cir. 2008) ("To be eligible for any protection under the ADA, an individual must be disabled within the meaning of the Act."). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities" of the person alleging a disability. 42 U.S.C. § 12102(1)(A). The applicable regulations include "breathing" as one of several "major life activities." 29 C.F.R. § 1630.2(i)(1)(i).

In support of their argument that O'Reilly has not alleged that she is disabled within the meaning of the ADA, Defendants cite a deluge of cases in which courts rejected claims that contra-indications to vaccines constituted a disability under the ADA. (*See id.* at 7 (collecting cases).) But the cases Defendants cite are factually distinguishable.[5] *See Mercer v.*

---

[5] Defendants also cite several cases in which courts granted summary judgment to the defendants on ADA claims based on denial of a vaccine exemption. *See Hustvet v. Allina Heath Sys.*, 910 F.3d 399, 411 (8th Cir. 2018); *Jacobs v. Mercy Health*, 719 F. Supp. 3d 894, 909 (E.D. Mo. 2024); *Richardson v. Grays Harbor Cnty. Pub. Hosp. Dist. No 1*, No. C20-5814, 2021 WL 9649848, at *1 (W.D. Wash. 2021); *Godbolt v. Trinity Prot. Servs., Inc*, No. GJH-14-3546, 2017 WL 2579020, at *1 (D. Md. June 12, 2017). These cases are inapplicable here because the standard at summary judgment is markedly higher than on a motion to dismiss. Further, the courts in those cases based their decisions on the lack of record evidence supporting the alleged disabilities. They did not conclude that the plaintiffs had failed to allege that they would experience a vaccine reaction that qualifies as a disability under the ADA, but rather that their medical records did not support their allegations. *See Hustvet*, 910 F.3d at 411 ("There is insufficient evidence in the record . . . ."); *Jacobs*, 719 F. Supp. 3d at 909; *Richardson*, 2021 WL 9649848, at *5. In contrast, at this early stage, the court's review is confined to the allegations in the Amended Complaint, which the court accepts as true.

*Viacomcbs/Paramount*, No. 22 Civ. 6322, 2024 WL 3553133, at *4–5 (S.D.N.Y. July 26, 2024) (concluding that the plaintiff had not alleged disability where the vaccine exemption request was based on "assertions[s] of an allergy to the vaccine [that] is speculative and medically unsupported," the supporting affidavit did not "address Plaintiff's own medical condition," and the plaintiff had never "experienced any of [the asserted] side effects"); *Perez v. N.Y. Presbyterian/Weill Cornell Med. Ctr.*, No. 23-CV-6152, 2024 WL 1514216, at *5–6 (S.D.N.Y. Apr. 8, 2024) (concluding that the plaintiff had not alleged disability where the alleged vaccine reaction included only temporary symptoms such as weakness, fatigue, or a rash); *Eubanks v. Mercy Med. Ctr., Inc.*, No. WDQ-15-513, 2015 WL 9255326, at *6 (D. Md. Dec. 17, 2015) (concluding that the plaintiff had not alleged disability where the complaint did not contain allegations of the symptoms plaintiff herself suffered). While the plaintiff in *Norman v. NYU Langone Health System*, which Defendants also cite, did experience shortness of breath—like O'Reilly—that plaintiff also alleged that "she had not had any serious problems with shortness of breath, wheezing, or chest pain" and that her reaction to a prior vaccine "subsided after about ten to twenty minutes" without medical intervention. 492 F. Supp. 3d 154, 164 (S.D.N.Y. 2020).

In contrast, O'Reilly alleges that, when she has an asthma or allergy attack, she experiences "shortness of breath, wheezing, and coughing." (Am. Compl. at 1.) She has had "a few" attacks at work. (*Id.*) When this occurred, she had to use an inhaler and take "a 15-minute break to get fresh air," but nonetheless continued to experience "continual wheezing and shortness of breath for three additional days despite medication." (*Id.*) Further, at the time that Defendants imposed a COVID-19 vaccination requirement, her healthcare provider

advised her against receiving the vaccine (*id.* at 2), and governmental guidance likewise advised that individuals with O'Reilly's respiratory issues not receive the vaccine (*id.* at 3). Taken together, these facts adequately allege that, due to her allergies and asthma, O'Reilly risked a serious adverse reaction to the COVID-19 vaccine that would likely have impaired her ability to breathe. Because the EEOC's regulations define "major life activities" to include "breathing," *see* 29 C.F.R. § 1630.2(i)(1)(i), these facts allege that, if O'Reilly had received the vaccine, she would have been limited in one or more major life activities and would therefore have been disabled within the meaning of the ADA, *see* 42 U.S.C. § 12102(1)(A).

At bottom, the fact that O'Reilly's healthcare provider advised her against receiving the vaccine, coupled with governmental guidance at the time, adequately alleges that O'Reilly's contra-indications for the COVID-19 vaccine are sufficiently serious for her potential vaccine reaction to be a qualifying disability under the ADA. At this stage of litigation, that is sufficient to satisfy her burden to establish that she was disabled within the meaning of the ADA. Contrary to the plaintiffs in the cases Defendants cite—who only experienced rashes and similar "garden variety" allergy symptoms, or shortness of breath that subsided on its own without medical intervention and would not require the plaintiff to leave work—O'Reilly contends that she risked an asthma attack that impaired her ability to breathe for several days even with required medication. These alleged side effects are far more than mere "garden variety" symptoms.

To be sure, the court would have preferred that O'Reilly include more detailed factual allegations regarding the temporal extent or severity of the medical risks she faced from the vaccine. But the federal pleading standard "does not require 'detailed factual allegations'" at

- 11 -

the motion to dismiss stage, and the plaintiff must plead only "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 570). Under that standard, O'Reilly has sufficiently alleged that she was disabled within the meaning of the ADA.

Accordingly, Defendants' motions to dismiss the Amended Complaint will be denied. O'Reilly's Amended Complaint sufficiently pleads claims of wrongful termination, discrimination, failure to accommodate, and retaliation under the ADA, and she may proceed with those claims. In addition, the court construes her assertion that Defendants' "actions constitute discrimination under the ADA *and relevant state laws prohibiting disability discrimination*" as seeking to bring analogous state law claims. In this context, that means that O'Reilly brings claims under the Virginia Human Rights Act (VHRA). *See* Va. Code Ann. §§ 2.2-3905–2.2-3905.1. Because the VHRA and ADA are "substantially identical statutes," courts generally analyze "ADA and VHRA discrimination claims together." *Washington v. Offender Aid & Restoration of Charlottesville-Albemarle, Inc.*, 6677 F. Supp. 3d 383, 399 n.12 (W.D. Va. 2023); *Ayers v. Wal-Mart Assocs., Inc.*, No. 7:23-cv-00419, 2024 WL 4182706, at *9 (W.D. Va. Sept. 13, 2024) ("VHRA state claims mirror their federal counterparts and are subject to the same standards."). Thus, O'Reilly's Amended Complaint also sufficiently pleads claims of wrongful termination, discrimination, failure to accommodate, and retaliation under the VHRA, and those claims will proceed as well.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss will be denied. O'Reilly may proceed on claims of wrongful termination, discrimination, failure to accommodate, and

retaliation under the ADA and claims of wrongful termination, discrimination, failure to accommodate, and retaliation under the VHRA.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all parties and counsel of record.

**ENTERED** this 15th day of April, 2025.

<u>/s/ Thomas T. Cullen</u>
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE